**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-20991-CIV-ALTONAGA/Reid**

**DAVID ROSS**,

Plaintiff,

v.

**ARCHER PUBLICATIONS LIMITED**; *et al.*,

Defendants.
_______________________________/

# ORDER

**THIS CAUSE** came before the Court on Defendant, Lawrence Alkin's Motion to Dismiss Complaint [ECF No. 44], filed on November 27, 2024.[1] Plaintiff, David Ross filed a Response [ECF No. 46], to which Defendant filed a Reply [ECF No. 47]. The Court has carefully considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

## I. BACKGROUND

This action arises from the allegedly unauthorized sale of copyrighted photographs. (*See generally* Am. Compl. [ECF No. 34]). Plaintiff, photographer and copyright owner, brings this action under the Copyright Act for copyright infringement against Defendants, Archer and Archer's director, Alkin. (*See id.* ¶¶ 1–10).

In 1988, Plaintiff captured the first-ever photoshoot of iconic, then-rising supermodel Kate Moss. (*See id.* ¶¶ 21–24). Decades later, in 2013, Plaintiff agreed to exhibit original prints and

[1] Defendant, Archer Publications Limited ("Archer"), is not challenging personal jurisdiction. (*See* Answer & Affirmative Defenses to Pl.'s First Am. Compl. ("Answer") [ECF No. 36] ¶¶ 18–19). "Defendant" in this Order refers solely to Alkin unless specifically indicated otherwise.

digital copies of the photoshoot (the "Moss photographs") in Defendant's gallery and to split any profits from sales evenly. (*See id.* ¶¶ 27–28; *see also* Mot., Ex. 1, Decl. of Lawrence Alkin ("Decl.") [ECF No. 44-1] ¶ 4). After the exhibition ended, Defendants allegedly represented to Plaintiff that they had returned all unsold prints and digital files of the Moss photographs, as agreed. (*See* Am. Compl. ¶¶ 30–31).

In 2019, Plaintiff discovered that Defendants still possessed some of the Moss photographs and sent a demand letter requesting that Defendants return all photos. (*See id.* ¶ 33; *see also id.*, Ex. 2, Demand Letter [ECF No. 34-2]). Defendants did not respond to the Demand Letter, and around three years later, Plaintiff learned that Defendants were selling the Moss photographs for far below market value on their website.[2] (*See id.* ¶¶ 35–38). Plaintiff continued to contact Defendants, demanding they cease the reproduction, display, distribution, and sale of the Moss photographs; but Defendants failed to respond. (*See id.* ¶ 39).

Copyright Registration paperwork indicates that Plaintiff registered the Moss photographs for copyright protection in October 2022. (*See id.* ¶ 22; *see also id.*, Ex. 1, Copyright Registration [ECF No. 34-1]). Following the registration — according to both Alkin and Plaintiff — Defendants made a single sale containing three of the copyrighted works into Florida on December 28, 2023. (*See id.* ¶¶ 45–46; *see also* Decl. ¶¶ 7–8; Mot. 5–6).[3]

Plaintiff alleges Defendants sold all the remaining Moss photographs bearing Plaintiff's signature without permission and without providing Plaintiff compensation. (*See* Am. Compl. ¶¶

[2] Alkin states he never received the Demand Letter. (*See* Decl. ¶ 5).

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

40, 47). He brings a single claim against Defendants for copyright infringement. (*See id.* ¶¶ 48–58).

Defendant states — and Plaintiff does not contest — that Plaintiff's counsel made the singular purchase that brought the three infringing works into Florida. (*See* Mot. 5–6; Decl. ¶¶ 7–8; Reply 4–5; *see generally* Resp.). Defendant also states, upon information and belief, that this single sale is the only sale Defendants ever made to the state of Florida. (*See* Decl. ¶ 7). Plaintiff resides in Spain, while Defendants are based in the United Kingdom. (*See* Am. Compl. ¶¶ 8–10). Alkin brings the present Motion under Federal Rule of Civil Procedure 12(b)(2), asserting that the Court does not have personal jurisdiction over him.[4] (*See generally* Mot.).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against him by asserting the defense of lack of personal jurisdiction. Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (alterations added; citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction over a nonresident defendant only if the requirements of (1) Florida's long-arm statute and (2) the Due Process Clause

[4] Defendant relies on Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. 1). Yet, his Motion exclusively challenges the Court's personal jurisdiction over Defendant, which implicates Rule 12(b)(2). (*See generally Mot.*). Plaintiff seems to recognize Defendant's oversight, explicitly mentioning Rule 12(b)(2) in his briefing. (*See* Resp. 6). Considering Defendant's Motion does not contain arguments that would comport with a Rule 12(b)(6) motion, the Court construes the filing as a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Cf. Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, No. 13-cv-457, 2014 WL 4626597, at *4 (M.D. Fla. Sept. 16, 2014) ("Although [Defendant] characterizes its Motion as a request for dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6)," "the Court will construe the Motion as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)." (alteration added; citation omitted)).

of the Fourteenth Amendment to the United States Constitution are both satisfied, *see Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citation omitted).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). A plaintiff must allege sufficient facts to establish personal jurisdiction over "each defendant separately." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's [declaration]." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (alteration added; citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). Nevertheless, "vague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (alterations added; citation and footnote call number omitted).

When a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to defendant to make a prima facie showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "If the defendant is able to refute personal jurisdiction by sustaining [his] burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate [his] jurisdictional allegations through affidavits, testimony, or other evidence of [his] own." *Peruyero*, 83 F. Supp. 3d at 1286–87 (alterations added; citing *Future Tech.*, 218 F.3d at 1249).

## III. DISCUSSION

Plaintiff alleges the Court has personal jurisdiction over Defendant based on the sale of three infringing photographs into Florida on December 28, 2023. (*See* Am. Compl. ¶¶ 19, 45–46). According to Defendant, this isolated transaction does not confer personal jurisdiction under Florida's long-arm statute and due process requirements. (*See generally* Mot.; Decl.). The Court agrees with Plaintiff, finding he alleges sufficient facts to confer personal jurisdiction on Defendant under Section 48.193(1)(a)(2), Florida Statutes; and that the Court's exercise of personal jurisdiction comports with due process. (*See generally* Am. Compl.). Moreover, Defendant's Declaration does not successfully rebut Plaintiff's facts establishing personal jurisdiction. (*See generally* Decl.).

### *A. Defendant's Actions*

Before analyzing Defendant's activities to ensure personal jurisdiction exists under Florida's long-arm statute, the Court notes Defendant's Declaration includes a singular sentence indirectly distancing himself from the conduct at issue in this suit. (*See id.* ¶ 3). Defendant mentions that although he is the Director of Archer Publications Limited, he has "not been involved in the business on a day-to-day basis" since entering a state of semi-retirement in May 2022. (*Id.*).

But Defendant does not claim he was uninvolved in the alleged infringement. (*See generally* Decl.; Mot.). And as Archer's Director and majority shareholder, Plaintiff asserts, and Defendant does not controvert, that Defendant controlled the company. (*See* Am. Compl. ¶¶ 11–13; Resp. 4–5). Plaintiff further asserts that Defendant "was and is a moving, active[,] and conscious force behind . . . Archer's copyright infringement." (Am. Compl. ¶ 15 (alterations added)). Defendant makes no attempt to contest this allegation. (*See generally* Decl.; Mot.).

Defendant's statement regarding his semi-retirement also does not adequately rebut Plaintiff's assertion in his Amended Complaint, which includes a screenshot from Archer's website, claiming Defendant personally "got his hands on some never-before-seen photographs" and displaying Defendant's picture adjacent to a description of the photographs. (Am. Compl. ¶ 42). Defendant briefly mentions in his Reply that the activities were Archer's, not his own, but "the Court will not consider an argument raised for the first time in a reply memorandum." *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1284 n.15 (S.D. Fla. 2021).[5]

Given that Plaintiff properly pleads Defendant's involvement, and Defendant's filings do not rebut this involvement, the Court considers the activities alleged in the Amended Complaint, along with the facts in the Declaration and Motion.

### *B. Specific Personal Jurisdiction Under Florida Law*

Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2). The scope of Florida's long-arm statute is a question of Florida law. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Plaintiff alleges the Court has personal jurisdiction over Defendant under Florida's long-arm statute.[6] (*See* Resp. 6–7). Under Section 48.193(1)(a)(2), Florida Statutes, a court may

---

[5] The Court further notes Defendant "cannot invoke Florida's corporate shield doctrine" in cases involving intentional torts. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354–55 (11th Cir. 2013).

[6] Plaintiff alleges the Court has *both* general and specific personal jurisdiction over Defendant. (*See* Am. Compl. ¶¶ 18–19). Defendant raises the lack of general and specific personal jurisdiction in his Motion. (*See* Mot. 2–4). In his Response, Plaintiff does not rebut Defendant's arguments regarding general personal jurisdiction or even mention general personal jurisdiction. (*See generally* Resp.). Instead, Plaintiff only claims that Defendant's conduct satisfies Florida's long-arm statute under Section 48.193(1)(a)(2), Florida Statutes, conferring specific personal jurisdiction. (*See* Resp. 6). Consequently, the Court assumes it does not have general personal jurisdiction over Defendant. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned." (citations omitted)).

exercise specific personal jurisdiction over a non-resident defendant for any cause of action arising from "a tortious act" committed "within the state[.]" Fla. Stat. § 48.193(1)(a)(2) (alteration added); *see also Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015)).

***1. "a tortious act"***

First, "[c]opyright infringement is a tortious act within the meaning of" Florida's long-arm statute. *Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, No. 07-22066-Civ, 2008 WL 4724495, at *5 (S.D. Fla. Oct. 24, 2008) (alteration added; citations omitted). And the unauthorized distribution of a copyrighted work constitutes copyright infringement. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 843 (11th Cir. 1990). Therefore, Defendant's alleged actions would constitute a tortious act, because Plaintiff alleges that Defendants sold his copyrighted work into Florida without permission. (*See* Am. Compl. ¶ 45; Decl. ¶ 7).[7]

***2. "within the state"***

Eleventh Circuit case law confirms that a defendant commits a tortious act in Florida when he sells infringing goods into the state.[8] *See Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1273–

[7] Defendant only responds that the verbal agreement to sell the copyrighted works did not contain an end date. (*See* Decl. ¶ 4). "The appropriate inquiry [in a personal jurisdiction analysis] is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred." *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 734 (Fla. 3d DCA 2006) (alteration added; citation omitted).

[8] While Defendant argues that the *site of the tortious conduct* occurs where the copyright owner resides (*see* Mot. 4), he incorrectly articulates this general principle. The correct phrasing of this concept is that the *site of plaintiff's injury* occurs where the copyright owner resides. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 12-cv-755, 2012 WL 2952452, at *5 (M.D. Fla. July 19, 2012). And although Plaintiff might *feel* the injury at his place of residence, "Florida's long-arm statute only requires a plaintiff's place of injury to be Florida if the tortious act was committed *outside* the state." *Tavakoli v. Doronin*, No. 18-21592-Civ, 2019 WL 1242669, at *8 (S.D. Fla. Mar. 18, 2019) (emphasis in original; citation omitted). Here, Plaintiff alleges the sale of an infringing work directly into Florida, which is enough to satisfy the statute. (*See* Am. Compl. ¶ 45).

74 (11th Cir. 2022) (citation omitted; clarifying that a defendant in a previous Eleventh Circuit case committed a tort in Florida in part because he sold his trademark-infringing goods to Florida residents). Defendant attempts to argue that "the site of tortious conduct occurs where the copyright owner resides[,]" so the tort did not really occur in Florida.[9] (Mot. 4 (alteration added)). Yet Plaintiff alleges — and Defendant does not contest — that Defendant sold three of the copyrighted works into Florida. (*See* Am. Compl. ¶ 45; Decl. ¶ 7). This act is sufficient for the tort of infringement to occur in Florida. *See Del Valle*, 56 F.4th at 1273–74.

The Amended Complaint sufficiently alleges facts to fulfill Florida's long-arm statute, and Defendant's Motion and Declaration do not contest the facts relevant to the Court's jurisdictional analysis. (*See generally* Mot.; Decl.). Still, this does not end the Court's inquiry. Plaintiff must next show Defendant's activities are such that Defendant could reasonably expect to be haled into court in the forum state, requiring an analysis of personal jurisdiction under the Due Process Clause. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).

***C. Due Process***

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Id.* at 471–72 (quotation marks and citation omitted). The Court agrees with Plaintiff that the exercise of specific personal jurisdiction over Defendant comports with due process. Defendant's use of a website advertising its products into Florida, combined with the sale of three

---

[9] In one of the few instances where Defendant attempts to employ case law to support the assertions in his Motion, he references *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), stating that the opinion establishes that the situs of a *copyright* injury is where the owner resides. (*See* Mot. 3–4). *Licciardello* is a *trademark* case, and the court noted it "need *not* decide whether trademark injury necessarily occurs where the owner of the mark resides[.]" 544 F.3d at 1283 (alteration and emphasis added).

infringing items into Florida, is sufficient to provide notice to Defendant that he could expect to be subject to suit in the state.

The Eleventh Circuit uses a three-part test to determine whether the exercise of specific personal jurisdiction aligns with due process:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quotation marks and citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotation marks and citation omitted).

***1. Prong One: "arise out of or relate to"***

The first prong of the due process analysis asks whether Defendant's contacts "relate to" Plaintiff's claims; this means "the contact must be a 'but-for' cause of the tort." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quotation marks omitted; quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009)). As discussed, Defendant, as director of Archer, sold Plaintiff's copyrighted photographs directly into Florida without Plaintiff's permission, providing the basis for the copyright infringement suit. (*See* Am. Compl. ¶ 45). The first prong is satisfied.

***2. Prong Two: "purposefully availed"***

Next, the Court addresses the second prong of the due process analysis: purposeful availment. In the Amended Complaint, Plaintiff implies Defendant purposefully availed himself

of the privilege of conducting activities in Florida by making sales into the forum. (*See* Am. Compl. ¶¶ 19, 45–46). Defendant argues that the Court's exercise of personal jurisdiction over him would violate due process because Plaintiff's attorney intentionally purchased the photographs to manufacture personal jurisdiction and coax Defendant to the forum state. (*See* Mot. 5–6). Defendant further claims this purchase is "one of the only, if not the only, sale Archer has made to the state of Florida." (*Id.* 6). Again, Plaintiff has the more convincing argument.

In intentional tort cases, courts may assess the purposeful availment prong using two independent inquiries: the effects test, *see Calder v. Jones*, 465 U.S. 783, 789 (1984); or the traditional minimum contacts test, *see Del Valle*, 56 F.4th at 1276. Under the effects test, a nonresident defendant's tortious act will amount to purposeful availment of the privilege of conducting activities in the forum state when the tort was: (1) "intentional; (2) [ ] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356 (alteration added; quotation marks and citation omitted). Because either test suffices, and Defendant's actions as alleged in the Amended Complaint satisfy the effects test, the Court does not consider the traditional minimum contacts test. *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023).

(1) Part One: Intentionality. The first part of the effects test is satisfied because "[c]opyright infringement has been considered an intentional tort for purposes of personal jurisdiction[.]" *Yellow Pages Photos, Inc.*, 2012 WL 2952452, at *5 (alterations added; citation omitted). Defendant's allegedly unauthorized sale of the copyrighted work into the forum state in exchange for money is enough to demonstrate intentionality. *See id.*; (*see also* Am. Compl. ¶¶ 36, 45–46).

(2) Part Two: Aimed at Forum State. While the second part of the effects test presents a more challenging question under the present facts, the Court finds Defendant aimed his conduct at the forum state by setting up a website accessible to Florida customers and ultimately selling the infringing works into Florida. *See Rosenstock v. Sollars*, No. 17-cv-81127, 2018 WL 8367072, at *3 (S.D. Fla. Jan. 24, 2018) ("Mere operation of an interactive website alone does not give rise to purposeful availment anywhere the website can be accessed, but an accessible website, in conjunction with other contacts that directly give rise to the cause of action, may be sufficient." (alterations adopted; quotation marks, emphasis, and citation omitted)); *see also easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-Civ, 2020 WL 5500695, at *12 (S.D. Fla. Sept. 11, 2020) (finding an international company purposefully availed itself of the privilege of conducting business in Florida because it conducted business over the Internet in the United States and Florida, was willing to — and did — directly sell its services to Florida customers, did not limit its sales to any region or area, and accepted payment from Florida customers).

Furthermore, although specific personal jurisdiction here is based upon a single sale containing three infringing works,[10] "so long as it creates a substantial connection with the forum, even a single act can support jurisdiction." *Licciardello*, 544 F.3d at 1285 (alteration adopted; quotation marks and citations omitted). "Intentional torts are such acts[] and may support the

[10] Defendant makes much of the fact that Plaintiff's counsel made the singular purchase into the forum state. (*See* Mot. 5–6; Decl. ¶¶ 7–8; Reply 4–5). Plaintiff does not contest that his attorney purchased the copyrighted photos. (*See generally* Resp.). To be sure, "a single, isolated contact when initiated by the plaintiff, not the defendant" may not satisfy purposeful availment because the action results "not from the conduct of the defendant, but from the conduct of others." *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1316 (S.D. Fla. 2006) (citations omitted). Yet, the facts in *Elite Aluminum* are quite different from the facts in this case. In *Elite Aluminum*, the defendant did not publish a website that enabled sales into the forum state. *See id.* at 1316. Instead, the plaintiff reached out to the defendant to solicit the sale. *See id.* at 1316–17. By contrast, Defendant established a widely accessible website that effectively invited purchases from consumers in the forum state. (*See* Am. Compl. ¶¶ 35, 45).

exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Id.* (alteration added; citation omitted). Although the Eleventh Circuit has not decided whether a single online sale into a forum state can form the "minimum contacts" necessary to satisfy due process, the Court finds that, under the present facts, one sale involving multiple infringing works through a website accessible in the forum state suffices to satisfy due process.[11]

In this regard, the Court finds the analysis in *NBA Properties, Incorporated v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), particularly persuasive, in part because the facts align most closely with those of the instant case. *See id.* at 614. In *NBA Properties*, the court reasoned that, although the defendant's only contact with the forum state was the singular sale of a trademark-infringing item, the defendant still availed himself of the privilege of conducting activities in the forum state because he "shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from [the forum state] and developed the capacity to fill them." *Id.* at 625 (alteration added). In the same way, Defendant here directed his activities toward Florida by developing a website that allowed for sales into Florida and shipping the items into the state. (*See* Am. Compl. ¶¶ 37–38, 45–46).

Additionally, the Seventh Circuit articulated that the identity of the purchaser of the infringing product — Plaintiff's agent — was inconsequential to the due process analysis, because purposeful availment focuses on the "structuring of [Defendant's] *own* activities so as to target the [Florida] market." *Id.* at 624 (alterations and emphasis added). Here, too, *Plaintiff's agent* initiated the only known sale into the forum state. (*See* Decl. ¶¶ 7–8 (emphasis added)). But Defendant published a website accessible in Florida and chose to fulfill the order containing the infringing

[11] *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095–96 (9th Cir. 2023) (collecting cases acknowledging disagreement on this issue among the federal courts of appeal).

products into Florida. (*See* Am. Compl. ¶¶ 35, 45). These activities are sufficient to establish purposeful availment for purposes of due process.

(3) Part Three: Caused Expected Harm in Forum State. Finally, Defendant's sale of the infringing item caused harm that Defendant should have anticipated would be suffered in the forum state, as required by the final part of the effects test. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (citation omitted). In the context of *trademark infringement*, a tort occurs in Florida when an infringing item is sold to Florida residents. *See Del Valle*, 56 F.4th at 1273–74; *see also Louis Vuitton Malletier, S.A.*, 736 F.3d at 1354 (finding that a tortious act "caused injury in Florida . . . because [plaintiff's] . . . infringing goods were not only accessible on [a] website, but were sold to Florida customers through the website." (alterations added)). The Court sees no reason why this logic should not extend to *copyright* cases.

***3. Prong Three: "fair play and substantial justice"***

Having found Plaintiff satisfies the first two prongs of the due process analysis, the Court turns to whether exercise of personal jurisdiction over Defendant would comport with traditional notions of fair play and substantial justice. *See Burger King Corp.*, 471 U.S. at 476 (quotations and citation omitted). Under this prong, the Court analyzes (1) "the burden on the defendant"; (2) "the forum [s]tate's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) the "judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (alteration added; citations omitted).

Defendant argues that forcing him to litigate in a foreign forum where he has no contacts violates notions of fair play and substantial justice. (*See* Mot. 5–6; Reply 2–3). Yet, "modern

methods of transportation and communication reduce this burden significantly." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (citation omitted). Additionally, the "United States certainly has an interest in upholding federal copyright laws[.]" *Barrocos of Fla., Inc. v. Elmassian*, No. 11-cv-22393, 2012 WL 1622988, at * 9 (S.D. Fla. May 9, 2012) (alteration added; quotation marks and citation omitted). And Florida has an interest in protecting its consumers against the solicitation of infringing goods. *See CreeLED, Inc. v. Individuals*, 699 F. Supp. 3d 1357, 1363 (S.D. Fla. 2023).

Finally, dismissing this action against Defendant for lack of personal jurisdiction would force Plaintiff to bring his suit against Defendant in another country. This would put Plaintiff in the challenging position of having to "litigate on two fronts" — in two different countries — under the same set of facts, against the same attorney representing a company and its director.[12] *Barrocos of Fla., Inc.*, 2012 WL 1622988, at *9.

Weighing all the factors — and recognizing that the burden is on Defendant to argue that the exercise of personal jurisdiction over him would not comport with notions of fair play and substantial justice — the Court finds Defendant has not met his burden. In sum, the Court's exercise of personal jurisdiction over Defendant comports with general notions of fair play and substantial justice.[13]

## IV. CONCLUSION

For the foregoing reasons, it is

---

[12] Defendants are represented by the same counsel. (*Compare* Answer 5 *with* Mot. 6–7).

[13] Defendant raises a *forum non conveniens* argument in his Reply, for the first time. Again, the Court will not consider an argument raised for the first time in a reply. *See Frayman*, 515 F. Supp. 3d at 1284 n.15; *see also Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-Civ, 2008 WL 926509, at *11 n.7 (S.D. Fla. Mar. 31, 2008) (refusing to consider a *forum non conveniens* argument first raised in a reply memorandum).

**ORDERED AND ADJUDGED** that Defendant, Lawrence Alkin's Motion to Dismiss Complaint **[ECF No. 44]** is **DENIED** without prejudice.

**DONE AND ORDERED** in Miami, Florida, this 18th day of January, 2025

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record